UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| Evan Ratcliff,<br><br>                    Plaintiff,<br><br>    v.<br><br>Bob Faulkner; et al.,<br><br>                    Defendants. | Case No. 2:21-cv-01351-RFB-DJA<br><br>**Order** |

This is a prisoner civil rights complaint arising out of Plaintiff's allegation that prison officials and medical staff denied him eye medication following his corneal transplant surgery. Plaintiff initiated this action as a *pro se* litigant and is now represented by counsel. Plaintiff—through his counsel—seeks to file a first amended complaint and to supplement the complaint under Federal Rules of Civil Procedure 15 (governing amendment and supplementation) and 21 (governing misjoinder and nonjoinder of parties). (ECF No. 114). Defendant Bob Faulkner—former Director of Nursing at Southern Nevada Correctional Center—opposes Plaintiff's motion, arguing that the deadline for amending pleadings and adding parties has already passed, that Plaintiff's proposed amendment would be futile, and that supplementation is not proper.[1] (ECF

---

[1] Faulkner also argues that the Court "remains obligated under 28 U.S.C. § 1915(e)(2) (*in forma pauperis*) and 28 U.S.C. § 1915(a) and 42 U.S.C. § 1997(c) (*pro se* prisoner/detainee complaints) to screen Ratcliff's proposed amended complaint," which screening process "would cause an undue delay." (ECF No. 115 at 15-17). The Court does not address this argument because courts in this district have determined that, while there is no question that the Prison Litigation Reform Act requires courts to engage in pre-answer screening of an inmate's complaint, this compulsory screening requirement does not extend to every proposed amended complaint filed post-answer. *Scott v. Cox*, No. 2:17-cv-00702-JAD-BNW, 2020 WL 9056041, at *1 (D. Nev. Sept. 29, 2020); *Collins v NDOC*, No. 2:22-cv-01795-CDS-BNW, 2024 WL 2061010, at *1-3 (D. Nev. Jan. 26, 2024). This is especially true here where Faulkner has already appeared, accepted service, filed an answer, and more. And Faulkner has not put forth mandatory authority requiring the Court to screen Plaintiff's amended complaint.

No. 115). Plaintiff responds and acknowledges that the motion is late, but maintains that he has demonstrated good cause to extend the deadline to file it. (ECF No. 116). He also opposes Faulkner's argument that his amendment is futile. (*Id.*). Because the Court finds that Plaintiff's motion to amend is not untimely and that his proposed amendment and supplementation is not futile, it grants Plaintiff's motion to amend his complaint.

**I.    Background.**

     *A.    Factual background.[2]*

Plaintiff filed his complaint *pro se* on July 16, 2021. (ECF No. 1-1). In it, he sues Defendants Bob Faulkner, Donna, and T.J., for events that took place while Plaintiff was incarcerated at the Southern Desert Correctional Center ("SDCC"). (*Id.* at 1-5). Plaintiff brought one count and sought injunctive and monetary relief. (*Id.* at 4-10).

The complaint alleged that on February 1, 2018, Plaintiff had a cornea transplant procedure. (*Id.* at 4). Following the procedure, Plaintiff was prescribed prednisolone, which helps prevent rejection of the transplant; dorzolamide, which is a pressure regulating eyedrop; and artificial tears, which prevent dry eye. (*Id.*). It was also determined that stitches should be left in Plaintiff's eye. (*Id.*).

To ensure that Plaintiff consistently received his medication, an NDOC eye doctor wrote an order stating that Plaintiff was on "chronic care" and that his eye medication "must not lapse." (*Id.* at 5). The doctor who performed the surgery also wrote that Plaintiff would need to remain on medication and should receive eye drops upon request. (*Id.*). Defendants Faulkner, Donna, and T.J. were all aware of these medical orders. (*Id.*).

In March 2021, Plaintiff asked to be seen by medical because he was experiencing sharp pains in his eye. (*Id.*). Plaintiff also requested a refill of his medication. (*Id.*). Plaintiff was told that his medication was allowed to lapse and could not be filled. (*Id.*). Faulkner and his staff

---

[2] These facts are derived from Plaintiff's complaint and the order screening that complaint and are not intended to be findings of fact.

allowed Plaintiff's medication to lapse, even though they knew of the orders that his medication must not lapse. (*Id.*).

Plaintiff informed nurse T.J. and nurse Donna that he needed a refill of his medication, but they told him that because his prescription had lapsed, they would not provide him the medication. (*Id.*). During this lapse in medication, Plaintiff suffered serious pressure and pain in his eye. (*Id.*). On March 31, 2021, Plaintiff was taken to a specialist who determined that Plaintiff's stiches had come loose, and that Plaintiff developed an infection in his eye. (*Id.*). Plaintiff had notified the Defendants of a sharp poking pain in his eye three weeks earlier, but nothing was done about it. (*Id.*). Based on these allegations, Plaintiff brought a claim of deliberate indifference to a serious medical need under the Eighth Amendment. (*Id.*).

**B.     Procedural background.**

The Court screened Plaintiff's complaint on December 27, 2021, allowing his claim to go forward against all three Defendants. (ECF No. 12). The Office of the Attorney General ("OAG") accepted service on Faulkner's behalf on July 25, 2022, but could not identify Donna or T.J. and did not accept service on their behalf. (ECF No. 26). Faulkner is the only active defendant in this case.

The latest deadline for the parties to amend pleadings or add parties was May 28, 2024. (ECF No. 87). However, on May 29, 2024, the parties stipulated to stay the case. (ECF No. 96). They again stipulated to stay the case on June 25, 2024. (ECF No. 104). The Cout granted the second stipulation and denied the first as moot on August 29, 2024, staying discovery pending resolution of a global settlement and ordering the parties to file a stipulated discovery plan thirty days after the process concluded. (ECF No. 112). Plaintiff filed his motion to amend on September 13, 2024. (ECF No. 114).

///

///

///

Plaintiff moves to amend and supplement his complaint, to add seven Doe Defendants[3] and to add facts that occurred after he filed his complaint in July of 2021. (ECF No. 114). Plaintiff explains that his amendment is necessary to address ongoing deprivations of medical care, Faulkner's retirement and actions by the new Director of Nursing, and the actions of Doe defendants. (*Id.* at 2-5). Plaintiff asserts that the new Defendants should already be aware of the current case and their role in it. (*Id.* at 5). Anticipating an argument from Faulkner that Plaintiff has not fulfilled the prison grievance exhaustion requirement, Plaintiff points out that the purpose of the exhaustion requirement—to give prisons a fair opportunity to correct their errors—is moot where Defendants have continually declined to correct their errors. (*Id.* at 5-6).

Faulkner argues in response that Plaintiff has failed to acknowledge that the deadline to amend pleadings and add parties has passed and that Plaintiff has not shown good cause to extend that deadline. (ECF No. 115 at 3-4). Faulkner adds that, even if Plaintiff did show good cause to extend the deadline, his proposed amendment is futile. (*Id.* at 3-14). Specifically, Plaintiff has failed to exhaust his prison grievance administrative remedies because he initially attempted to use a first level grievance form to file an informal level grievance on March 23, 2021, claiming that there were no informal grievance forms available.[4] (*Id.* at 7). The prison rejected the form and explained to Plaintiff that he needed to begin at the informal level. (*Id.* at 8). But despite his various attempts, Plaintiff failed to correct the error, which Faulkner argues resulted in him abandoning his claim. (*Id.*). Faulkner adds that Plaintiff's proposed amendment is futile because he and the Doe Defendants are protected by qualified immunity. (*Id.* at 9-14). Faulkner supports his qualified immunity argument by stating that "there is no constitutional violation because Ratcliff's claims are procedurally barred for failure to exhaust available administrative remedies" and that the delays in Plaintiff's medical care were ultimately harmless. (*Id.*). Faulkner

---

[3] These include Doe Charge Nurse Donna, Doe Charge Nurse T.J., Doe Nurse A, Doe Nurse B, Doe Pharmacy Director, Doe Nurse C, and Doe Director of Nursing. (ECF No. 114-1).

[4] The prison grievance process begins at the informal level, and then proceeds to a first level appeal, and then a second level appeal. Administrative Regulation 740.08-740.10.

concludes that Plaintiff's proposed supplement should really be brought as a separate action, instead of as a supplement to this one. (*Id.* at 14-15).

      Plaintiff replies and argues that he has met the good cause standard to extend the deadline to amend pleadings and add parties because, although the deadline passed, the parties sought a stay the very next day to begin negotiating a settlement. (ECF No. 116 at 4-5). Plaintiff argues that his efforts in negotiating, subsequent emergency motions regarding his medications, and handwritten request for a stay to amend his complaint on August 6, 2024, indicate his diligence in seeking to amend, despite missing the deadline. (*Id.*). Regarding Faulkner's exhaustion argument, Plaintiff points out that he attempted to follow the grievance procedure, but that there were no forms for him to begin at the informal level, which he pointed out in his grievance. (*Id.* at 6). Not only did Faulkner not dispute that the form was unavailable, but Faulkner also ignores that the prison sent Plaintiff notice that his grievance was improper *fifty-one* days after Plaintiff submitted it, six days late under the Administrative Regulations. (*Id.*). So, Plaintiff was entitled to proceed to the next grievance level, which he did. (*Id.*). Plaintiff also points out that the grievance procedure only allows for emergency grievances for life-threatening issues. (*Id.* at 7-8). But, because the loss of sight is not life-threatening, Plaintiff was forced to engage in an administrative procedure that did not provide a meaningful administrative remedy, so the Court should not consider his failure to exhaust to mean that his claims are futile. (*Id.*). Plaintiff addresses Faulkner's qualified immunity argument by pointing out that, just because Plaintiff did not exhaust administrative remedies does not mean that Faulkner and the Doe Defendants did not violate Plaintiff's constitutional rights. (*Id.* at 8-9). He adds that, whether Faulkner and the Doe Defendants are entitled to qualified immunity is a question of fact more appropriately decided by the trier of fact. (*Id.*). Finally, Plaintiff points out that supplementation is appropriate because it would be a waste of judicial resources to try two cases involving essentially the same factual matter. (*Id.* at 9-10).

**II.     Discussion.**

     *A.     Federal Rule of Civil Procedure 16(b).*

When the deadline for amending pleadings under a scheduling order has passed, the court's analysis of a motion to amend must start with Rule 16(b). *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (court correctly applied Rule 16(b) because time to amend pleadings lapsed before party moved to amend); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) (analysis begins with Rule 16(b) once deadline to amend pleadings has passed). Under Rule 16(b)(4), a "schedule may be modified only for good cause and with the judge's consent." Unlike Rule 15(a)'s "liberal amendment policy[,] . . . Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment . . . [i]f that party was not diligent, the inquiry should end." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) (internal quotations and citations omitted); *see also Mammoth Recreations*, 975 F.2d at 609-10 (no good cause for amendment when movant knew of facts and theory from the beginning of the case and waited until four months after the deadline for amendments passed to move to amend).

     Here, it is not clear to the Court that the deadline to amend pleadings or add parties has actually passed. The absence of any argument pointing this out is troubling given the parties' stipulation to extend the deadline, which stipulation the Court granted. (ECF Nos. 104, 112). In that stipulation, the parties noted that they were exploring a global settlement before the Honorable Magistrate Judge Brenda Weksler. (ECF No. 104). They thus proposed that *all* deadlines—including the deadline to amend pleadings or add parties—be suspended pending the outcome of the settlement negotiations. (*Id.*).

     The Court granted that request and provided that "[i]f this case proceeds after the settlement process, the parties must file a stipulated discovery plan **thirty days** after the process concluded." (ECF No. 112 at 2) (emphasis in original). The parties reported to Judge Weksler that they had reached an impasse in negotiations on September 12, 2024. *See Ratcliff v. Caldarone*, No. 2:21-cv-01155-CDS-BNW, at ECF No. 77. Plaintiff moved to amend his

complaint in this case the very next day. (ECF No. 114). The parties have yet to file their stipulated discovery plan and scheduling order as required by the Court. But, if anything, that means that the deadline to amend pleadings or add parties is in limbo, not necessarily that it has passed. The Court declines to decide this motion under Rule 16.

### B.   Federal Rules of Civil Procedure 15(a), 15(d), and 21.

Generally, a party may amend its pleading once "as a matter of course" within twenty-one days of serving it, or within twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. "The court considers five factors [under Rule 15] in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). The nonmovant bears the burden of showing why amendment should not be granted. *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed. Cir. 1986); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) ("party opposing amendment bears the burden of showing prejudice"); *United States for use & benefit of Source Helicopters, Div. of Rogers Helicopters, Inc. v. Sayers Constr., LLC*, No. 2:19-v-1602-JCM-EJY, 2020 WL 3643431, at *1 (D. Nev. July 6, 2020) ("The party opposing amendment holds the burden to demonstrate futility."); *Akinola v. Severns*, No. 3:14-CV-00222-HDM, 2015 WL 456535, at *2 (D. Nev. Feb. 2, 2015) ("party opposing the amendment carries the burden of showing why leave to amend should not be granted.").

An amendment is futile only if no set of facts can be proved under the amendment that would constitute a valid claim or defense. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). "Denial of leave to amend on [futility grounds] is rare. Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *GMAC Mortgage LLC v. Nevada Association Services, Inc.*, No. 2:13-cv-01157-GMN-NJK, 2018 WL 487101, at *2 (D. Nev. Jan.

5, 2018) (internal citations and quotations omitted).  "Deferring ruling on the sufficiency of the allegations is preferred in light of the more liberal standards applicable to motions to amend and the fact that the parties' arguments are better developed through a motion to dismiss or a motion for summary judgment." *Id.* (internal citations omitted).

Under Federal Rule of Civil Procedure 15(d), the court may permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  The rule is intended to give district courts broad discretion in allowing supplemental pleadings, and in deciding whether to permit a supplemental pleading, the court's focus is on judicial efficiency. *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988); *Yates v. Auto City 76*, 299 F.R.D. 611, 613 (N.D. Cal. 2013) (citing *Planned Parenthood of S. Az. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997)).  The use of supplemental pleadings is "favored" because it enables a court to award complete relief in one action "to avoid the cost, delay and waste of separate actions which must be separately tried and prosected." *Keith*, 858 at 473.  So, matters newly alleged in a supplemental complaint must have "some relation to the claims set forth in the original pleading." *Keith*, 858 F.2d at 474.  The legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as the standard for granting or denying a motion under Rule 15(a). *Yates*, 299 F.R.D. at 614.

Federal Rule of Civil Procedure 21 addresses misjoinder and nonjoinder of parties and states that the Court may at any time, on just terms, add or drop a party. Fed. R. Civ. P. 21. When deciding motions under Rule 21, courts apply the same standard of liberality afforded to motions to amend pleadings under Rule 15. *See Pan Am. World Airways, Inc. v. U.S. Dist. Court for Central Dist. of California*, 523 F.2d 1073, 1079 (9th Cir. 1975) (explaining that, because Rule 21 does not contain standards for the propriety of joiner, it must incorporate standards to be found elsewhere); *see Rodriguez v. City of Phoenix*, No. CV-11-01992-PHX-JAT, 2014 WL 1053602, at *6 (D. Ariz. Mar. 19, 2014) (relying on the Ninth Circuit's decision in *Pan Am. World Airways* to reach the conclusion that "when deciding whether to permit the addition of defendants, court apply the same standard of liberality afforded to motions to amend pleadings under Rule 15.") (internal quotations omitted).

Here, considering the liberal standards for allowing leave to amend, leave to supplement, and leave to add parties, and the fact that Faulkner carries the burden of showing why amendment should not be granted, the Court grants Plaintiff's motion to amend. Faulkner's primary arguments about why the Court should not grant leave to amend, supplement, and add parties are that Plaintiff's claims are futile because Plaintiff did not exhaust his grievances and because Faulkner and Doe Defendants are entitled to qualified immunity. But denial of leave to amend on futility grounds is rare and given Plaintiff's arguments opposing Faulkner's exhaustion arguments and qualified immunity, it is not clear that no set of facts could be proved under Plaintiff's amendment that would constitute a valid claim.[5] Faulkner's arguments are better developed through a motion to dismiss.

Additionally, Faulkner's argument that Plaintiff's supplement would be better brought through a separate cause of action ignores that the supplemental pleadings are directly related to the claims set forth in the original pleading. Having reviewed the additional claims—which describe an ongoing lack of care for Plaintiff's eye problems—the Court finds that it would be a waste of judicial resources to separately try them. The Court thus grants Plaintiff's motion to amend and supplement.

---

[5] The Court recognizes that the Supreme Court has stressed the importance of resolving immunity questions at the earliest possible stage in litigation because qualified immunity is an immunity from suit rather than a mere defense to liability. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). And to be clear, the Court is not persuaded by Plaintiff's unsupported argument that qualified immunity is a "factual issue that must be determined by the trier of fact." (ECF No. 116 at 9); *Hunter*, 502 U.S. at 228 (explaining that immunity should ordinarily "be decided by the court long before trial"). But the Court declines to decide qualified immunity at this stage given the liberal amendment standard and the fact that Faulkner and Doe Defendants may still raise their qualified immunity arguments through a motion to dismiss.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to amend (ECF No. 114) is **granted.** Plaintiff shall file and serve the amended pleading as required by Local Rule 15-1(b).

DATED: November 6, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE